of Health and Human Services. Mr. Solomon. Let me just say good morning. Good morning Judge. He's a new presider. He's ousted me. And as presiding judge, I would like to ask your indulgence in reserving five minutes for rebuttal. Certainly, that's granted. And so that the court is aware, I have at council table with me Mr. Alan Sklarsky, who is plaintiff's personal injury counsel in the underlying matter, in case there are any questions concerning the procedural circumstances of the underlying case. Your honors, may it please the court. This case is about the government's overreaching in asserting Medicare reimbursement claims at the expense of elderly and disabled injured beneficiaries. This case is yet another example of Medicare's overstepping its statutory authority to demand reimbursement as the case law demonstrates it has done virtually since the enactment. If it's such an overstepping and so unexpected, why is it that in your correspondence in relation to the settlement of the case, you presumed that you would owe Medicare reimbursement? Judge, I think that's a little inaccurate. The correspondence concerning the Medicare so-called lien is necessitated by New Jersey's form interrogatories in the first place. You have to provide all medical expenses that were expended on behalf of a claimant in a personal injury case in New Jersey as part of the pro forma interrogatories that are propounded in every personal injury case, regardless of whether or not those funds are collectible as damages in the personal injury case. I'm not sure I understand what you just said. Every personal injury case in New Jersey, you have to file answers to interrogatories, and they are specified by the court that there are form interrogatories attached to the New Jersey court to file them. One of the questions in the form interrogatories is, what were the medical expenses in this case? And you have to answer that and provide that information regardless of whether there's a claim for damages for those medical expenses. I was asking about the letters that you sent. You sent letters saying you can't, and this made perfect sense to me based on my experience doing civil litigation. You said, I can't value this claim until I know what we're going to have to pay Medicare. Didn't you send letters to that effect? There were letters sent to that effect. Why would you send letters to that effect if you did not, in fact, have to reimburse Medicare? The question is not whether we'd have to reimburse Medicare. The question is, really, at that stage of the litigation, you want to gather all the information you can, all the potential damages that you might have. Whether there's an actual reimbursement is a matter for a later day. And in this case... Have you read your complaint? Have you read the settlement agreement? I have, Judge. Have you read the Appeals Council decision in which they describe your certification and those letters, put in quotes, certification? Yes, Judge, but, you know... So you're not really responding to Judge Hardiman's question about the effect of those letters which were replete with reference to potential settlement. I am trying to get to that, Judge. You better, because I have a lot of questions myself. All right. Those letters were sent at the very beginning of investigation of the claim. Before there was suit filed, you know, before there were interrogatories propounded, before there were any settlement negotiations, you know, these letters were sent a year and a half before suit was even filed. And, you know, two and a half, or I'm sorry, between a year and six months before suit was even filed. And when the suit was filed, when the suit was filed... No, not after the suit was filed. I'm saying when the suit was filed, you were seeking medical expenses in the complaint. Right. To the extent that there were damages that are not covered by collateral sources of benefits, you have to plead that. And complaints in New Jersey are pleaded in very general terms. You don't ask for... Let's get into that a little bit. Judge Simandl's March 2012 opinion in Mason v. Siberius is not factually distinguishable from this case in any, or legally distinguishable in any material way. You and Mr. Sklarsky were counsel in that case. Yes, Judge. And you never appealed it. We did not appeal it. You did not appeal it. That decision so impressed the appeals counsel that just a few months after Judge Simandl issued his opinion, it went out of its way, it reached out to accept virtually all, indeed, if you didn't reject a thing, Judge Simandl said, in all of the cases, including the New Jersey court's interpretation of New Jersey's collateral source doctrine, the collateral source statute does not apply to bar reimbursement of conditional Medicare claims, on and on the appeals counsel went. Judge Rodriguez, the judge in this case, relied heavily on the Mason opinion. And you don't, in your brief, you virtually ignore it. There are two references in your 59 page or 56 page blue brief. One just in a footnote, just to say it contradicts early, which was an earlier District of New Jersey unreported decision, period. And then later on, you note that Judge Simandl relied on Lusky. And then you don't mention Mason again, but you go on to talk about Lusky. And here we are, we have this wealth of information out of Mason v. Sibelius, and out of the appeals counsel, and you're back to square one, arguing those issues you first argued to Judge Simandl. Yes, Judge. And frankly, we didn't take that case up on appeal because we felt that Judge Simandl may have been correct in that the proportionality argument wasn't squarely raised in the underlying administrative process. That's right. So you went in and you moved to amend your complaint later on. After your decision, you went back to Judge Simandl to raise that, the pro rata argument. And he denied it. He said, number one, it's too late. And number two, it's absolutely meritless. And he explained in a number of pages why that is so. Right. And I think that, quite frankly, Judge Simandl got it wrong. He didn't appeal it. We did not appeal that case, but we're not obligated to appeal every case that is Of course you're not. But look what the appeals counsel did with what he did. And you don't really tell us that. You don't even mention Mason except in passing. Anyway, that's my answer on that. Judge, Mason obviously is an unreported decision. It's not precedential in any way. And this court is certainly free to make its own findings concerning the application of the law in this case. Well, you want us to follow Early. In essence, yes, Judge. And Early is All right. But Early relied on the Fifth Circuit's decision in Getzman, correct? Correct. And that was abrogated. So why Okay. And that Don't you have a problem here with the 2003 amendments? I guess that's what I'm driving at. Right. That brings us squarely to the issue that we face today. Getzman sets the stage for what has happened since. Now, in the cases leading up to Getzman, the courts had consistently told Medicare that you're overstepping your statutory authority in making these reimbursement claims. The reimbursement right doesn't extend to Medicare went to the government, went to Congress, and said, Please amend the statute to give us the right to reach court claims in our reimbursement actions. And Congress did so. But they didn't give Medicare an absolute right of recovery. They limited that right by requiring that there be a demonstrated responsibility to pay for the Medicare-covered items or service. And how is one to ascertain whether there is a demonstrated responsibility? Well, that's a good question. And our argument in this case is that demonstrated responsibility is the limit of legal liability that a defendant might have to pay for the medical expenses. All right. And one would think that the way we look at that is to look at the complaint, look at the settlement agreement, look at all the terms wherein medical expenses are constantly referenced. As I understand your argument, you're saying, Well, that may all be true, but it's immaterial because, voila, we have a court order that wipes all that out. Isn't that the essence of your argument? The essence of the argument is that you can claim whatever you want in a personal injury complaint. Whether that's actually recoverable at the end of the day is going to depend on the facts of the case and the applicable law. Are you saying you didn't recover medical expenses? If you look at the value of the case... So, yes, I try to give you a yes or no. Are you saying that you did not recover medical expenses? I am saying that, yes, that is what I'm saying, that we did not recover medical expenses in the case. We did not recover... You did not recover medical expenses. Then why did the settlement agreement advert to that and why did the release encompass that? The release and settlement agreement are a general release that expunges all claims. Does that mean that we don't take it on its face value? Judge, the release in this case also released claims for uninsured motorist benefits, for property damage... It mentions medical expenses. It mentions all kinds of things. But you can't realistically say that there were... We're not concerned with those other things. We're concerned with the medical expenses. I understand that, but the language of the release is drafted in such a way as to release all potential claims that there ever could be from the beginning of time until today. And it includes all kinds of things that... And if it includes something specifically, we're not supposed to take that into account? It includes numerous things specifically and it includes numerous things generally. Which ones should we ignore and which ones should we believe? I think the problem is, quite frankly, in a release, if we had tried to exclude medical expenses from the release, for example... The government would have come right down on you. The government would have said, right, that's a collusive agreement and you can't do that and we're not going to honor the terms of the release. Now they want it the other way, that whatever it says in the release is binding on the government. But that's not true. What we have here is a private settlement between litigants. And then we have an order from the court who evaluated the case, evaluated the law, and entered an order as to what the limits of recoverable damages are. We can get there maybe on rebuttal, but I have one question here in terms of the first half of what you said. Because certainly Appeals Council gave limited weight of anything to what the court did in the allegation order. And it tells us why. But we are here... I mean, you're making the argument as if there is no standard of review. You have the burden here. It's your burden to meet. And it's high. And I can't start with this. The council made a factual... The council did a de novo review of the ALJ's decision and made a factual finding that the settlement included medical expenses. Now, we can only set aside an agency's factual determination if you show us that they were not supported by substantial evidence. How can you possibly meet that burden given the evidence here? The MAC gave absolutely no backup for their decision. They provided no basis on which to conclude that medical expenses were recovered or that Mrs. Teranski received full compensation, let alone medical expenses, for the value of her injuries. In this case, the medical expenses billed in this case were $91,000. Her recovery in the case was $90,000. Her injury was a highly comminuted fracture of the forearm that required several surgeries, bone grafting. She had poor results from the surgeries. It was a really serious injury. And to say that her net recovery of $60,000 after her attorney's fees and expenses are paid constituted full compensation plus medical expenses for the value of the injuries, it's not consistent with reality. But the standard is whether it's consistent with reality. The standard is there's substantial evidence in the record to support your theory, and speaking only for myself, I don't see anything. If you look at the amount of the recovery and the type of injuries sustained and the value of the case and the liability issues involved, this was a trip-and-fall accident where liability was highly contested. It was likely to result in a defense verdict had the case gone to trial. But you didn't take it to trial, you settled it. Exactly, and that is the whole point of the proportionality argument in Medicare reimbursement claims, is that in order to facilitate settlements, you have to take a discount on the value of the case. And this was a highly discounted case. The alternative is to try every case to verdict. And rather than getting a settlement, which may be discounted, but where everybody, including Medicare, recovers something out of the case, you'll push cases to trial, burdening the courts with unnecessary trials, solely to get a determination as to what the value of medical expenses are in the case, which could otherwise be negotiated with Medicare. And you'll risk getting defense verdicts where nobody gets anything. And then Medicare has to foot the full bill. And then Medicare foots the full bill as a result? We understand your argument. We'll hear you on rebuttal. Thank you. Mr. Tenney? May it please the Court, Daniel Tenney, representing the Secretary of Health and Human Services. Congress addressed exactly the issues presented in this case in the 2003 amendments to the Medicare secondary payer provisions. Those provisions, those amendments were specifically designed to address a circumstance in which a Medicare beneficiary had received Medicare benefits and then entered into a tort settlement. And the question that had been presented to the courts in the Getzman case mentioned earlier, among others, was whether Medicare could obtain reimbursement when there was a settlement of that type. And Congress enacted language specifically designed to address those circumstances, which said, yes, it says that there has to be a demonstrated responsibility to pay, but then it explains in the second sentence of that provision how you demonstrate that there is a responsibility. And one of the ways you can do it is if someone obtains a payment in exchange for the release of a claim, whether or not there is... Isn't the language judgment on the merits? The language of the statute, which is what I'm referring to now, which is reprinted on A2 of our addendum. It's the very last page of the brief. The language that we're relying on is responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release, whether or not there is a determination or admission of liability of payment for items or services included in a claim against the primary plan or the primary plans insured or by other means. So the statutory question in this case is whether there was a release of payment for items or services included in a claim against the primary plan. Now, there's no dispute that the claim against the primary plan, that is the tort complaint, included claims for medical expenses for which Medicare paid. There's a certification to that effect from plaintiff's counsel in the Joint Appendix. There's no question that there was a release. There's no question that the release released those claims. It says so on the face of the release. And so there's no... And the statute makes explicit, it says whether or not there is a determination or admission of liability. So we do not need to find liability. The statute's quite clear about that. So there's really no statutory question in this case. The statute makes clear that when you release a claim for payment, it doesn't matter if it's a good claim or a bad claim, we don't have to figure out liability. If you release a claim and you get a payment, then the Medicare secondary payer obligation is triggered and the... All right, let's assume for a minute that that's persuasive. What about Mr. Solomon's argument that allocation makes sense here? And particularly, I'd like you to address his policy concern that if these cases are brought to trial and the plaintiffs lose, then Medicare is going to incur remarkably higher expenses than they do when a settlement like this one is reached. First of all, as a statutory matter, the statute specifies in the first sentence the amount of reimbursement. It says, for any payment made by the secretary under this subchapter. So the relevant amount is the amount that was paid by the secretary. But in terms of the policy question, there's a few responses. One, in this case, even with Medicare obtaining the reimbursement to which we believe we're entitled, it did work out in the way that plaintiffs suggest. Medicare is collecting about $10,000. The settlement was $90,000. The attorneys are getting their attorney's fees. The plaintiff is collecting a substantial share of the settlement, and Medicare is getting reimbursed for medical expenses. Now, in our view, the statutory language is clear, so the policy argument should be addressed to Congress. But in terms of why Congress would have set it up this way, the alternative is that when there's a settlement, then you have to have either a new proceeding to allocate it to determine some sort of metaphysical question of how much of the settlement is for medical expenses and how much isn't. This was addressed in 1995 in the Zinman case of the Ninth Circuit, which addressed exactly this issue and said that Medicare was reasonable, even under the old terms of the statute, which were far less clear on the tort point than the statute is today, that it was reasonable not to leave Medicare either to conduct a whole new proceeding or to be at the mercy of the plaintiff's estimation of how much the damages are. Now, in terms of... Well, you're not totally at their mercy. You could have intervened, right? Well... You were unnoticed that they were going to go into New Jersey court and get an order, and I can't imagine that you didn't know what they were up to when they were going to do that. Right. I mean, that would somewhat bridge the two categories of, first, contemplating a significant additional proceeding. Second of all, there's no indication that Congress expected this to be litigated in a state court that really the state court had nothing to resolve. The payment was made to the plaintiff. There was no issue before the state court. The idea that Medicare, in order to protect its rights, has to go into state court, where it would ordinarily enjoy sovereign immunity, and litigate, I don't even know what the question would be, how much of the money was actually for medical expenses. Now, but in answer... There's a significant safety valve, which is that the secretary enjoys discretion to compromise or waive in full or in part payment to the extent that it's in the best interests of the program. And so that's something that Congress built in, but it's in the discretion of the secretary, and then it would be reviewed, presumably, by this court if it was arbitrary and capricious. There's no assertion, nor could there be in this case, that the secretary was arbitrary in not collecting the amount, given that this particular settlement contained ample funds to reimburse the secretary, pay the attorneys, and make sure that plaintiff enjoyed a significant recovery as well. What if it didn't? You're saying you'd take a different position? Well, a claim that it didn't would be, in the first instance, presented to the secretary to exercise the statutory authority for a compromise or waiver, and if the secretary determined that was appropriate, then that would be done. If the secretary determined that was inappropriate, then the plaintiff could go through the appeals process and then judicial review if, to the extent that the plaintiff thought that was warranted. I can't address in a hypothetical a circumstance in which the settlement didn't work out. The facts of this case include that the plaintiff was well aware of how much Medicare was going to pay. It's clear that the settlement agreement contemplated that there was going to be a reimbursement to Medicare when the parties decided to settle the case, they had that in mind. I'd also just like to point out It's mentioned in the agreement itself. It's mentioned in the agreement itself, that's right. What about the allocation, though? I mean, they cite Alborn and Medicaid. I guess your answer is Medicaid and Medicare statutes are different. That's our answer, and that's the answer the Sixth Circuit gave in the Haddon case, which we think was correct. Let me ask you a question about that, though, because that perhaps at first blush seems to be inverted in this sense. Why would a Medicare beneficiary, someone who's worked all their life, paid into the system and is entitled to some health care I'm accepting out people who get disability at a younger age, but the typical Medicare beneficiary is an older person who has worked and paid into the system, correct? I think that's probably correct. And the typical Medicaid beneficiary, as I understand it, that's a state program that regardless of whether anyone's paid anything into the system, if you're indigent enough, you get some help, correct? I think that's substantially right. All right, then how is it that the folks that have paid nothing into the system get the benefit of an allocation whereas someone like Ms. Taransky, who presumably has paid into the system her whole life, doesn't get that benefit? Doesn't that seem counterintuitive? Well, there's a few answers to that. The first is that there's actually a change in the Medicaid program that hasn't taken effect yet, but that would align it more closely with the Medicare program and give the Secretary a greater right to recovery in those circumstances. So Congress is trying to... Under way is a statutory repeal of Allborn's holding, essentially, is that what you're saying? Yes. At least in significant part. I guess I've just asked you the ultimate and hypothetical question. It's about to be irrelevant. I mean, another difference is these are very different programs in a number of respects, including the role of the states, how the funds are allocated and collected. So Congress would have any number of reasons to treat them differently, but they are becoming more aligned sort of as we speak, although it hasn't taken effect yet. I just wanted to point out one more policy concern that goes the other way. The tort defendant in this case bargained for a release of all claims, including claims for medical expenses. If any obligation to the Secretary wasn't satisfied by reimbursement to the Secretary, then the tort defendant would not be off the hook for medical expenses. That's quite clear from the regulations that if... The government can go against the tort defendant? That's correct. There's every reason that they would insist on a release of this liability and they made it quite clear that the obligation to satisfy liens to Medicare was to be borne by the plaintiff out of the settlement proceeds. The only way to make... Again, we don't think these policy arguments are really before the court because we think Congress has addressed it in the statutory text. Specifically, and at a minimum, the Secretary's interpretation is reasonable. But just in answer to the policy question that was posed, the way it works best is to make sure if you want to encourage settlements, that the settling defendant actually gets a full release of liability and is just off the hook for this. And to say, well, we're going to allocate it and then maybe we'll pay in part and so then the tort defendant potentially still has some exposure doesn't really serve the purposes. Now, if the Secretary waives the remainder, then that would be a different story because then they really would be off the hook in either event. Unless there are any questions. Hold on. The Eleventh Circuit's decision in Bradley, I understand it's not factually identical to this case, but its discussion of what constitutes a judgment on the merits seems to be on point here. If we accept your position, are we creating a circuit split with that decision? No. Because I'm not sure that the judgment on the merits is the right term, but in terms of what Bradley was addressing and what it was holding about the effect of a state court order, in Bradley the state court order that was at issue there was a question of whether certain monies were the property of the estate of the decedent or whether they were the property of the survivors who had independent and separate claims. There was actually an issue before the state probate court. The state probate court was determining whether certain monies were payable to the estate and it happens that those monies would then go to Medicare, or whether they were payable not as part of the estate, not the survivors as heirs, but the survivors in their own right having their own claims.  adjudicated before the state court of who gets the money, the survivors or the estate. Here what was being adjudicated according to Mr. Solomon is what was the basis for the settlement? Medical expenses? Was it personal injury? There's no contention here that under either answer to that question someone different gets the money in terms of the parties to the state proceeding. The plaintiff didn't get money because of the state court order. The plaintiff got the money because of the settlement agreement. There was no question of allocating if it was medical expenses then the plaintiff got it and if it was pain and suffering then somebody else got it. The plaintiff got the money and so the state court wasn't making any determination under state law of who has to pay money to whom. This was sort of an advisory determination based on an uncontested motion about how to describe something that had already happened. The central issue in the Bradley case was whether the payments were payable to the survivors and that were not payable to the Medicare beneficiary. In this case there's no question that all of the monies that the secretary is trying to collect here were payable to the Medicare beneficiary and the question of whether they of how you characterize them is simply irrelevant because the statute just talks about payments exchanged for releases and that's exactly what had happened here before the state entered any allocation order. Thank you very much. Thank you Mr. Tenney. Mr. Solomon. Thank you Judge. Judge Hardiman I think you hit right on the issue with the Bradley case. There's no distinction between the allocation order in the Bradley case and the allocation order in this case. In both cases the motions were unopposed. There was no dispute among the parties in the Bradley case as to how the money should be going to a court of competent jurisdiction to get a declaration that this portion of the money is for medical or is for damages that might be subject to a Medicare reimbursement claim and this portion of the recovery is for other elements of loss. And that's exactly what Mrs. Taransky did here. Wasn't it as to one party though? Only one party? In Mrs. Taransky's case it is. Not Mrs. Taransky's case. In the Bradley case. No there were like ten beneficiaries and the estate. So there was the estate and there were the child beneficiaries. So there's true adversity right? I mean they're competing interests isn't the concern here the collusive inherently, I'm not saying anything wrong was done, I'm saying the inherently collusive nature of walking in and going to a judge and saying hey we'd like an order, okay thanks. And that's the entire point of putting the issue before a court of competent jurisdiction to make that allocation is to avoid the allegation of collusiveness. Why is that on the merits though? Because the judge under New Jersey motion practice rules, the judge has to review the papers, make a determination of the law and the facts and enter an order. Are there any state orders in your view then that are not on the merits? I'm having trouble thinking of one right off the top. There may be there may be some procedural orders in the course of litigation that might conceivably not be on the merits. But this is an adjudication specifically. You say it's an adjudication I suppose everything's an adjudication if there's got had to define what does it mean to adjudicate? This was a one sided presentation and the council in footnote two said the council this is after putting your certification in quotes the council assigns very limited weight to the certification by appellants council and the finding that appellants council drafted for the order allocating the settlement because these documents were subjected to only very limited review and just to read the allocation order you can tell that. There's first of all there is no basis for making that kind of a determination by the MAC. Wait I'm not he said there's no basis but I'm not sure you're giving the appeals council it's due. I mean it did express a reason didn't it? I had here that it's reason was the appeals council and correct me if my understanding is wrong but the appeals council found as a matter of fact that the lump sum settlement included payment for medical expenses noting that the record demonstrated Turansky's council who demanded confirmation of the amount of Medicare's claim used the payments as a basis for the settlement. Is that not what the appeals council said? That's what the appeals council said. So that's not nothing. That's something and I think your challenge now is to persuade us why that something does not satisfy the more than a mere scintilla substantial evidence. And the council quotes your certification. Quote because New Jersey law does not permit a plaintiff's tort recovery such as medical expenses that have been compensated by way of collateral sources. Such losses were not considered in settlement negotiations between the parties in this action and are not part of any recovery. That's you that's your certification. That's why they describe it in quotes because of all the evidence that countermands it. I'm not sure why they put it in quotes, Judge. A certification is part of any motion proceeding in New Jersey. You have to provide a certification that sets forth the facts of the case and the basis for your motion. Well, I think that's an accurate statement is that the law of New Jersey, the personal injury law of New Jersey precludes recovery of any expense that's been compensated by way of a collateral source of benefits. There's no question about that. Now you're at the next level though that's your fallback position, right? I was trying to get your best argument on the initial argument position, which is where is there a lack of substantial evidence? I just pointed to something that for my own part seems to be plenty sufficient to satisfy that modest standard and I'm trying to give you an opportunity to dissuade me. I think, Judge Or maybe your answer is forget that one, let's focus on collateral source rule. I think, Judge, that there are all kinds of first of all, the letters that counsel wrote to Medicare they were never sent to the defendants in the case. Said what? Yes, said what? There's nothing to indicate in the record that those amounts even though requested by counsel for purposes of settling the case, there's nothing to indicate that those were ever actually used as a basis for settling the case. Particularly where you have a case that's going to set the reality of the litigation is that in a disputed liability case like this, the case is going to settle for something that's substantially less than full value of the case plus medical expense damages. So there's nothing to indicate that even though the counsel requested those numbers from Medicare that they were actually used as part of the settlement. That's number one. Why isn't the fact, well the appeals counsel said the fact that they were requested was evidence that they were used. Number two, no defendant And you're saying don't believe them. Well, I'm going to say that no defendant in a personal injury case in New Jersey is ever going to pay more in a settlement than they would be required to pay had they gone to trial and gotten a judgment at trial. If they can figure it out. Exactly, and you know to the extent that medical expense benefits that are compensated by a collateral source are not recoverable as damages in New Jersey as a matter of law, no defendant is going to pay for medical expenses that he wasn't going to have to pay for otherwise in a settlement. Now there's a chance that if the case had gone to trial, there is a proceeding, you know, we could have put those medical expenses in front of a jury for a line item on the verdict sheet specifically allocating medical expenses as part of the verdict and then there would be a post. Then you'd have a much better argument on the merits. We understand that. Right, but you're not going to get that in settling a case. So what do we do? We do the next best thing. We go to the court after the settlement has been agreed to and we say, Judge, here's the law that here's what we recovered in the case. You know, we need to address this issue with Medicare. The only way we can do that is by getting an allocation order from the court that we can present to Medicare to show them what the elements of damages are that are recoverable in this case because they won't accept a settlement agreement by itself. I think we're clear. We understand both of your arguments and we appreciate counsel's presentation. Thank you. We'll take the matter under advice.